**M.M. and D.M., by themselves and on behalf of their minor son, J.M., Plaintiffs,**

v.

**THE BOARD OF EDUCATION OF THE WATERVILLE CENTRAL SCHOOL DISTRICT; Michael Glover, (officially as) Superintendent of the Waterville Central School District; Richard P. Mills, (officially as) Commissioner of**

the New York State Department of Education; The New York State Department of Education; and Raymond A. Meier, (officially as) County Executive of the County of Oneida; and Oneida County, Defendants.

No. 95–CV–1407 RSP/DS.

United States District Court,
N.D. New York.

May 27, 1997.

Legal Services Of Central New York, Inc., Syracuse, NY, for Plaintiffs; Paul F. Kelly, of counsel.

Children's Rights Clinic, Syracuse University College of Law, Syracuse, NY, for Plaintiffs; Malcom C. Grace, Kristina A. Graham, Brian F. Bronson, Student Attorneys, Elizabeth Goldenberg, Supervising Attorney, of counsel.

Dennis C. Vacco, Attorney General of State of New York, for Defendants Mills and New York State Department of Education; Steven H. Schwartz, Associate Attorney, of counsel.

Ferrara, Fiorenza, Larrison, Barrett & Reitz, P.C., East Syracuse, NY, for Defendants Board of Education of the Waterville Central School District and Glover; Mark H. Reitz, Perri R. Guido, of counsel.

Capecelatro, Del Buono & Compson, P.C., Utica, NY, for Defendants Raymond Meier and Oneida County, David R. Diodati, of counsel.

## MEMORANDUM DECISION AND ORDER

POOLER, District Judge.

## INTRODUCTION

Defendants Richard P. Mills, Commissioner of the New York State Department of Education, and the New York State Department of Education ("DOE") (collectively, the "state defendants") move for summary judgment, arguing, among other things, that there is no concrete case or controversy between the plaintiffs and the state defendants. Because I agree that there is no justiciable dispute between plaintiffs and the state defendants, I grant summary judgment dismissing the complaint against Mills and DOE.

## BACKGROUND

Plaintiffs M.M. and D.M. brought this action on behalf of themselves and their son J.M., who is now seven years old.[1] Compl., Dkt. No. 1, ¶ 8. In December 1992, the Waterville Central School District's Committee on Special Education ("CPSE") classified J.M. as handicapped due to speech and language delays, a learning disability, and behavioral problems. Id. ¶¶ 8, 16.[2] Initially J.M. received educational services from the Building Blocks program of the United Cerebral Palsy Center ("UCPC") in Utica, New York, a program that did not include non-disabled children. Id. ¶ 16. In May 1994, UCPC advised J.M.'s parents that J.M.— then four years old—should attend a pre-

school for non-disabled ("typical") children because his more segregated placement at UCPC had caused J.M.'s social, behavioral and speech skills to regress. Id. ¶ 17. UCPC staff also informed the CPSE, which had scheduled a meeting concerning J.M. for July 7, 1994, that J.M. should be educated in an integrated setting. Id. Between May 1994 and the July 7 CPSE meeting, M.M. and D.M. visited several preschools and selected the Montessori Children's Center in Canastota ("Montessori Center") for J.M. Id. ¶ 18. However, shortly prior to the July 7 meeting, a DOE regional associate directed the CPSE chair not to recommend J.M.'s placement at the Montessori Center. Id. ¶ 19.

At the July 7 CPSE meeting, M.M. and D.M. asked the CPSE to change J.M.'s placement to a typical preschool like the Montessori Center. Id. ¶ 20. CPSE adjourned the meeting to August 2, 1994 to explore additional placement options. Id.

Because they were afraid of losing J.M.'s placement, M.M. and D.M. enrolled him in the Montessori Center on July 12, 1994. Id. ¶ 22. On July 13, 1994, CPSE Chair Penny Schneider assured M.M. that the district would pay for J.M.'s transportation costs to and from the Montessori Center. Id. ¶ 23. However, on July 18, 1994—at the direction of DOE's regional associate—Schneider reversed herself and told M.M. that the school would not pay for transportation or tuition. Id. ¶ 24.

At its August 2, 1994, meeting, the CPSE refused to recommend the Montessori Center placement for J.M. Id. ¶ 25. The CPSE also failed to recommend an alternate setting where J.M. could be educated with typical children. Id. ¶ 27. Instead, the committee recommended that J.M. receive related services (speech, occupational therapy, and physical therapy) only. Classification & Placement Recommendation, Hr'g Ex. 2, Dkt. No. 7.

---

1. Pursuant to stipulation of the parties and order of this court made May 31, 1996, plaintiffs are identified by pseudonyms in this litigation. See Dkt. No. 25.

2. The state defendants largely accepted the facts set forth in the complaint for purposes of this motion; therefore—for purposes of this motion only—I adopt the version of the facts set forth in the complaint.

J.M.'s parents allege that the CPSE's refusal to place J.M. at the Montessori Center stems from New York State law and policy disallowing state funding for placements of disabled children in preschools that are not on a state approved list. Compl. ¶ 32; *see also* Mem. of Thomas B. Neveldine, Compl. Ex. C. Plaintiffs claim that this policy does not allow disabled children to be educated with typical peers and thus (1) directly conflicts with federal law and regulation, *see* 20 U.S.C. § 1412(5)(B) and 34 C.F.R. §§ 300.551 and 300.552, cmt., and (2) resulted in the failure of the district to provide J.M. with a free appropriate public education in the least restrictive environment.[3]

On September 9, 1994, J.M.'s parents requested an impartial hearing pursuant to the IDEA. Compl. ¶ 36. In a decision issued February 16, 1995, the hearing officer noted "that the child is making progress in the setting [the Montessori Center] and the setting may be meeting the child's current needs" but found that J.M.'s parents were not entitled to reimbursement for their tuition expense because the Montessori Center was not an approved preschool. Impartial Hr'g Decision, Compl. Ex. D at 14. The hearing officer did, however, require the school district and Oneida County to pay for J.M.'s transportation expenses to and from the Montessori Center. *Id.*

Both J.M.'s parents and the Waterville Central School District ("district") appealed to DOE's state review officer ("SRO"), who held that (1) he had the power to order the district to reimburse plaintiffs for tuition at the Montessori Center despite the fact that the Montessori Center was not on the list of approved schools; (2) the district had not provided J.M. with an appropriate educational placement; (3) the hearing officer's decision on the tuition issue must nevertheless be affirmed because the parents failed to prove that the Montessori Center offered an appropriate educational placement for J.M.; and

(4) the hearing officer's decision on the transportation issue must be reversed because J.M. did not need transportation to the Montessori Center to benefit from the special education services he received there. SRO Decision, Compl. Ex. E., at 6–9.

Plaintiffs filed this lawsuit on October 2, 1995. They sued the district and its superintendent Michael Glover (collectively, the "district defendants"), the state defendants, and Oneida County and its county executive, Raymond A. Meier (collectively, the "county defendants").[4] Plaintiffs' complaint alleged violations of the IDEA; 20 U.S.C. § 1232g; Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794; 42 U.S.C. § 1983; the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.;* and New York law. As relief, plaintiffs requested (1) an order vacating the SRO's decision; (2) a declaration that the state's policy concerning private school placements for preschoolers violated federal law; (3) a declaration that the district and county defendants' failure to provide a placement in the least restrictive environment violated federal law; (4) an injunction requiring the state defendants to ensure that preschool children in New York are placed in the least restrictive environment; (5) an injunction requiring the county and district defendants to provide/recommend and implement a program in the least restrictive setting for all preschool children between three and five years of age; (6) an order and judgment directing the defendants to reimburse the plaintiffs for tuition and transportation costs paid to educate J.M. during the 1994–1995 school year; and (7) an award of costs and attorney's fees.

The county and district defendants answered, and the state defendants moved for summary judgment without answering. The plaintiffs and the county and district defendants opposed the state defendants' motion. The state defendants sought dismissal on the

---

**3.** "Free appropriate public education" and "least restrictive environment" are terms of art in the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq. See* 20 U.S.C. §§ 1412(1) and (5)(B). "Least restrictive environment" refers to the school district's obligation to educate disabled children to the maxi-

mum extent possible with non-disabled children. *See* 20 U.S.C. § 1412(5)(B).

**4.** Plaintiffs sued the county defendants because Oneida County is financially responsible for placements of preschool disabled children. Compl. ¶ 15.

following grounds: (1) they are not proper party defendants because there is no case or controversy between them and any other party; (2) the Eleventh Amendment bars plaintiffs' state law claims; and (3) plaintiffs' request for declaratory and injunctive relief is improper.

At oral argument on April 18, 1996, the defendants argued, based on *Seminole Tribe of Florida v. Florida,* — U.S. —, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996), that they also had Eleventh Amendment immunity for the remainder of plaintiffs' claims. Dkt. No. 21. Plaintiffs stipulated to dismissal of their state law and Section 1983 claims against DOE and Mills, whom plaintiffs had named in his official capacity only. *Id.* Plaintiffs elected not to seek leave to amend to add Mills as a defendant in his individual capacity. Dkt. No. 24.

## DISCUSSION

### I. Summary Judgment Standard

Summary judgment shall enter if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The materiality of facts must be determined with reference to the governing substantive law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

### II. Case and Controversy

The state defendants contend that there is no concrete case and controversy between them and plaintiffs. Because the SRO acts independently from the state defendants, *see Yamen v. Board of Educ. of Arlington Cent. Sch. Dist.,* 909 F.Supp. 207, 211 (S.D.N.Y. 1996), Mills and DOE argue that plaintiffs cannot sue them to contest the validity of the SRO's decision. The state defendants also argue that plaintiffs cannot state a claim based on Mills' general obligation to ensure that disabled children receive a free appro-

priate public education in the least restrictive environment. *See* 20 U.S.C. § 1412(6).

Plaintiffs respond that they do not claim that Mills or DOE is liable for the SRO's decision. Instead, M.M. & D.M. premise their claims against the state defendants on the active—and plaintiffs argue illegal—intervention of the DOE regional associate in the CPSE process and DOE's allegedly illegal policy of denying reimbursement for private preschool placements in schools that are not on DOE's approved list.

 Article III of the United States Constitution requires that the court adjudicate only "actual, ongoing controversies." *Honig v. Doe,* 484 U.S. 305, 317, 108 S.Ct. 592, 600–01, 98 L.Ed.2d 686 (1988) (citations omitted). To satisfy core Article III justiciability requirements, plaintiffs must allege: "(1) personal injury or threat of injury; (2) that the injury fairly can be traced to the action challenged; and (3) that the injury is likely to be redressed by the requested relief." *Heldman v. Sobol,* 962 F.2d 148, 154 (2d Cir.1992) (citations omitted). Plaintiffs' claims against the state defendants founder on both the second and third of these requirements. The DOE policy and the actions of the regional associate may have played a part in the district's initial refusal to pay for J.M.'s education. However, because the SRO explicitly rejected the DOE policy as a basis for decision and denied reimbursement on the ground that M.M. and D.M. did not prove that placement at the Montessori Center was appropriate for J.M., the policy played no part in the ultimate injury. Therefore, plaintiffs did not demonstrate a sufficient nexus between their injury and the state defendants' actions. *See Yamen,* 909 F.Supp. at 211.[5]

Moreover, proving that the state acted illegally by intervening in the CPSE process or in formulating the challenged policy will not entitle plaintiffs to vacation of the SRO decision or to reimbursement because (1) the SRO determined that J.M.'s parents failed to establish that the Montessori Center was an

5. Plaintiffs attempt to distinguish *Yamen* on the basis that the policy challenged in *Yamen* had played no part in the hearing officer's decision. This distinction lacks any compelling force. Be-

cause the SRO's decision was the final decision, plaintiffs must show that the defendants' policy played a part in that decision.

appropriate placement for J.M. and (2) M.M. and D.M. must establish that the Montessori Center was an appropriate placement to obtain reimbursement, *Florence County Sch. Dist. Four v. Carter,* 510 U.S. 7, 14–16, 114 S.Ct. 361, 366, 126 L.Ed.2d 284 (1993). Therefore, the plaintiffs also fail to demonstrate the third requirement for a case and controversy—redressability.

■ Plaintiffs' request for a declaratory judgment and injunction does not alter the analysis on redressability. Because J.M. is now past preschool age, neither a declaratory judgment nor an injunction would benefit him or redress any injury he has suffered. In order to satisfy the redressability requirement, J.M. must demonstrate that the injunction and declaratory judgment he requested "would be likely to redress the violation of [his] right" to an appropriate preschool education. *Heldman,* 962 F.2d at 157. J.M. cannot carry this burden because he is no longer entitled to an appropriate preschool education.[6]

Having found that plaintiffs' complaint against the state defendants does not present a justiciable controversy, I need not consider the state defendants' remaining arguments.

### CONCLUSION

Because no concrete case and controversy exists between plaintiffs and the state defendants, I grant the state defendants' request for summary judgment and dismiss the complaint against them.

IT IS SO ORDERED.

---

6. J.M.'s claim for declaratory and injunctive relief might also be rejected under a mootness analysis because there is no concrete threat that DOE's policy will harm him in the future. *Heldman,* 962 F.2d at 157.